IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DAMON JONES                                                        PLAINTIFF

                    v.                    Civil No. 1:10-cv-01006

SHERIFF DANNY FOSTER;
CAPTAIN TRUMAN YOUNG;
LT. JANET DELANEY; SGT. CLAUDIA
DAVIS; and JAILER SAMUEL PITTS                                    DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Damon Jones, filed this civil rights action pursuant to 42 U.S.C. § 1983.  He

proceeds *pro se* and *in forma pauperis.*  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and

(3)(2011), the Honorable Robert T. Dawson, United States District Judge, referred this case to the

undersigned for the purpose of making a report and recommendation.

Plaintiff is currently an inmate of the Grimes Unit of the Arkansas Department of Correction.

The events at issue in this case occurred while Plaintiff was incarcerated in the Columbia County

Detention Center (CCDC).  Specifically, Plaintiff maintains his rights were violated in the following

ways:  (1) he was denied adequate medical care; (2) he was denied Due Process[1] in connection with

his disciplinary confinement; (3) he was denied access to the courts; (4) his mail was interfered with;

(5) he was retaliated against; (6) he was housed in unconstitutional conditions of confinement and

subjected to group punishment; and (7) he was discriminated against because of his race.

---

[1]Defendants treat the Due Process claim as part of Plaintiff's claim that he was subjected to unconstitutional conditions of
confinement.

Defendants have filed a motion for summary judgment (ECF Nos. 13, 14 & 15).  To assist Plaintiff in responding to the motion, a questionnaire was prepared (ECF No. 20).  Plaintiff filed a timely response (ECF No. 21) and the motion is now ready for decision.

**1.  Background**

Plaintiff was booked into the CCDC on May 25, 2009, on pending criminal charges and a hold for the United States Marshal Service.  *Plaintiff's Response* (ECF No. 21) at ¶ 1 (hereinafter *Plff's Resp.*).  As part of the booking process, Plaintiff completed a medical form that indicated he had no health problems.  *Id.* at ¶ 3.

On June 9th, Plaintiff submitted a grievance stating that he submitted a medical request the last week of June concerning his ribs and had not been seen by the nurse.  *Plff's Resp.* at ¶ 4.  Captain Young responded that he would tell the nurse.  *Id.*  Plaintiff believes he was seen two to two and a half weeks later and prescribed Naproxen.  *Id.*

On June 21st, Plaintiff submitted a request stating they had killed several ticks on inmates and in the shower.  *Defs' Ex.* 3 at pg. 1.  He requested something to wash with that would kill bugs.  *Id.*  Captain Young responded:  "Ok."  *Id.*

On June 23rd, Plaintiff complained that some of his laundry came back completely wet and smelling of mildew.  *Defs' Ex.* 3 at pg. 2.  He also indicated his boxers, socks, t-shirts and towels came back brown and stinking.  *Id.*  He stated he should not be spending his money for items only to have them not properly cleaned.  *Id.*  In response, Captain Young stated that he agreed and it would be straightened out.  *Id.*

-2-

On June 24th, Plaintiff complained that no type of body soap had been issued for ticks or other bugs. *Defts' Ex.* 3 at pg. 3.  In response, Captain Young stated that something for lice could be issued and he would check on body shampoo. *Id.*

On June 30th, Plaintiff submitted a grievance complaining of racial discrimination. *Plff's Resp.* at ¶ 15; *Defts' Ex.* 3 at pg. 4.  He indicated he had been informed that inmates could not have books and magazines and that if any were sent they would be put in the inmate's property. *Id.* However, Plaintiff states he witnesses Officer Mike passing out books to a "white inmate." *Id.* Plaintiff asked whether there was some type of racial discrimination going on. *Id.*  Captain Young responded that he was unaware that this had occurred and would look into it immediately. *Id.*

On July 5th, Plaintiff stated that his commissary order was short by ten bags of chips and Officer Mike went to check on it and hadn't been seen since. *Defts' Ex.* 3 at pg. 5.  Plaintiff stated that multiple orders in pod 3 had been wrong. *Id.*  Captain Young responded stating he would see what happened. *Id.*

On July 9th, Plaintiff complained that he had filled out multiple medical requests about needing medical treatment because of severe pain in his ribs as a result of an incident with the Magnolia Police Department. *Defts' Ex.* 3 at pg. 6.  Captain Young responded that he would tell the nurse. *Id.*

On July 24th, Plaintiff stated he had filled out a request to be tested for tuberculosis (TB). He stated that TB was common in jails and the facility had no TB lights or sunlight to help fight germs. *Id.*  In response, Captain Young stated there was no trace of TB in the facility but if there was anyone with TB or TB symptoms tests would be conducted. *Id.*

On August 7th, Plaintiff was examined by the jail nurse for chest pain. *Plff's Resp.* at ¶ 5. His blood pressure was checked and it was 110/64. *Id.*

On August 8th, Plaintiff complained that his mattress and blankets were removed because he had beat on the window to get medical attention for chest pain. *Plff's Resp.* at ¶ 6(A). Plaintiff indicated he had no choice but to beat on the windows because the panic buttons did not work. *Id.* He was placed in administrative segregation Pod-5, also known as lock-down. *Id.* at ¶ 6(B). Plaintiff maintains that during Sergeant Davis' and Sergeant Pitts' shift he was denied medication, medical attention, and access to medical staff. *Id.* Plaintiff notified the next shift officers, Officer Turner and Sergeant Meeks, about his condition and the nurse was called. *Id.* at ¶ 6(C). Plaintiff was seen that day by the jail nurse because of complaints that his left arm was going to sleep. *Id.* at ¶ 6(D). Plaintiff's blood pressure was taken and was 112/70. *Id.* Plaintiff did not complete a grievance form regarding the delay in medical attention on August 8th. *Id.* at 6(G).

At the nurse's request, Plaintiff was transported to Magnolia Hospital. *Plff's Resp.* at ¶ 6(E). He was seen by an emergency room physician for complaints of chest pain. *Id.* at ¶ 6(F). The physician noted that Plaintiff was "a well-nourished, well-developed, well-hydrated, black male in no apparent distress." *Id.* at ¶ 6(G). It was concluded that the symptoms did not appear to be of cardiac etiology. *Defts' Ex.* 4 at pg. 17. The diagnosis was chest wall pain. *Id.* Tylenol and Ibuprofen were prescribed as needed for pain. *Id.* Plaintiff was to follow up with his primary care physician and was told to return to the emergency room if symptoms worsened. *Id.*

On August 9th, Plaintiff complained that a detention officer allowed a certain detainee special visitation privileges. *Plff's Resp.* at ¶ 16; *Defts' Ex.* 3 at pg. 8. Plaintiff stated he felt "racial

-4-

discrimination is an issue." *Id.* Captain Young responded that he would check this out and that Plaintiff was right. *Id.*

Plaintiff submitted another grievance on August 9th complaining that officers had removed the mattresses from pod 3 for ten hours because the inmates were noisy the previous night. *Plff's Resp.* at ¶ 29; *Defts' Ex.* 3 at pg. 9. Plaintiff stated he felt this constituted cruel and unusual punishment. *Id.* Captain Young responded that it was a form of disciplinary action and not punishment. *Id.* On two other occasions, Plaintiff maintains that Lieutenant Delaney took mattresses away from entire pods because of the action of a few inmates. *Plff's Resp.* at ¶ 35(B).

On August 16th, Plaintiff complained that his paperwork from the court required information about his inmate account, required a signature of jail personnel, and needed to taken care of as soon as possible. *Plff's Resp.* at ¶ 19; *Defts' Ex.* 3 at pg. 12. Captain Young responded that he was not going to "assist or aid [Plaintiff] in any matter against the facility that requires a signature." *Id.*

On August 18th, Plaintiff submitted another grievance about needing the account certificate for a case he was filing in court. *Defts' Ex.* 3 at pg. 14. No response appears on this grievance form. *Id.*

On August 24th, Plaintiff submitted a grievance asking why he had not received any response to his last two grievances regarding a paper he needed notarized for the court. *Plff's Resp.* at ¶ 20; *Defts' Ex.* 3 at pg. 16. He asked if the grievances were being tossed away. *Id.* Captain Young responded: "I told you I was not going to assist you with things you were going to file against this facility. If it is something about your case, yes." *Id.* On August 27th, Plaintiff submitted another grievance and was told Captain Young would not assist him and that he should have his attorney

assist him.  *Id.* at ¶ 21; *Defts' Ex.* 3 at pg. 17.  A similar response was given to a request submitted by Plaintiff on September 12th.  *Defts' Ex.* 3 at pg. 20.

On September 1st, Plaintiff again requested that the certification be completed regarding his account balance so he could send his paperwork in.  *Defts' Ex.* 3 at pg. 18.  In response, Captain Young stated it was highly unlikely that he would get any officer to sign the paperwork for him.  *Id.* Captain Young stated he was "not going to certify any paperwork" for Plaintiff.  *Id.*

On September 10th, Plaintiff submitted a grievance stating that on the 9th Lieutenant Delaney had taken the mattresses out of pod 3 and stated she could take the mattresses whenever she wanted to because it was not a constitutional right for inmates to have mattresses twenty-four hours a day. *Plff's Resp.* at ¶ 30; *Defts' Ex.* 3 at pg. 19.

On September 12th, Plaintiff again asked for his § 1983 form to be notarized.  *Defts' Ex.* 3 at pg. 20.  He also stated he had been told by Lieutenant Delaney that his situation concerning pod 5 would be discussed.  *Id.*  Captain Young indicated he would not notarize anything "against this jail."  *Id.*  He also asked what Plaintiff's situation was concerning pod 5.  *Id.*

On September 15th, Plaintiff submitted a grievance raising several issues.  *Defts' Ex.* 3 at pg. 21.  He complained that: mail hadn't been passed out for almost a week; they had not been getting recreation call; and he had been waiting two weeks to see the nurse.  *Id.*

Plaintiff submitted a request on September 27th stating that he had been moved to pod 5 where other inmates that he had problems with in the past were housed.  *Defts' Ex.* 3 at pg. 22.[2] According to the request form, Plaintiff was then taken the booking area and shackled to a bench from 4:15 p.m. until after 9:00 p.m.  *Id.*  He was then taken to the lock-down in pod 5.  *Id.*  Plaintiff

---

[2]Plaintiff states he recalls that he got into a verbal altercation with an inmate and was moved to pod 5.  *Plff's Resp.* at ¶ 22.

objected to this since he had done nothing to get punished for.  *Id.*  No written response appears on this form.

On September 29th, Plaintiff submitted a request asking why he was in administrative segregation.  *Plff's Resp.* at ¶ 23; *Defts' Ex.* 3 at pg. 23.  He stated he had not been in any trouble and certainly was not a threat to security.  *Id.*  Captain Young responded that it was not uncommon to move inmates around for various reasons.  *Id.*  He stated that the jailers apparently thought it was necessary.  *Id.*  Plaintiff states he remained in administrative segregation until some time in October of 2010.  *Plff's Resp.* at ¶ 23(B).

Plaintiff submitted a grievance about his mail being returned on October 8th.  *Plff's Resp.* at ¶ 31; *Defts' Ex.* 3 at pg. 24.  Captain Young stated he had not sent any mail back.  *Id.*

On October 9th, 2009, an incident report was written regarding excessive noise coming from pod 5.  *Plff's Resp.* at ¶ 24; *Defts' Ex.* 5 at pg. 1.  Plaintiff was removed and placed in detox by Officers Hughes and Hanson and pod 5 returned to being quiet.  *Id.*

On October 15th, Plaintiff submitted a request stating it as unsafe for him to be locked down twenty-three hours a day with no way to contact jail personnel and with no fire detection system. *Plff's Resp.* at ¶ 32; *Defts' Ex.* 3 at pg. 26.  Plaintiff also asked whether there was a written policy that allowed inmates to send sealed letters to courts, counsel, government officials, administrative of grievance organizations, officials of a confining authority, or parole or probation authorities.  *Id.* Plaintiff stated he knew that letters to and from these individuals could be opened for contraband inspection but only in the inmate's presence.  *Id.*  He maintained that his mail was constantly tampered with.  *Id.*

Plaintiff indicates that he slipped and fell in his cell due to flooding and that Officer Murphy didn't respond even though inmates beat on the window and door. *Plff's Resp.* at ¶ 32(B). Plaintiff does not indicate when he fell but does stay he was transported to Magnolia Hospital.[3]  *Id.*

Captain Young responded to the complaint by stating that he had not tampered with any legal mail. *Defts' Ex.* 3 at pg. 26. However, he stated: "I am not saying that a jailer did not." *Id.* He stated he would inform the jailers that if he did not open the mail they were not to. *Id.* He stated the jail had passed inspection by the State of Arkansas and that is what they went by. *Id.* He also noted that the intercom system was being worked on. *Id.*

On October 26th, Plaintiff submitted a grievance stating that he had a bad cold and had not been seen by the nurse despite having submitted several medical requests. *Plff's Resp.* at ¶ 7. Captain Young responded that he would tell the nurse  and hopefully she would see Plaintiff when she came in that week. *Id.* On October 27th, Captain Young wrote a note to Nurse Maness asking her to see a number of inmates, including Plaintiff, because they had been complaining their medical requests were being ignored. *Defendants' Exhibit* 5 at pg. 2 (hereinafter *Defts' Ex.*). The following day, Captain Young wrote a letter to Nurse Maness stating that inmates were submitting grievances claiming they were being denied medical attention, were not receiving their medication, and were threatening to file a law suit in Federal Court. *Id.* at pg. 3. Captain Young also stated that jailers had advised him that some medication was not being left out to give the inmates. *Id.*

On November 19th, an incident report was written stating that tobacco and a bag of green leafy substance was found in Plaintiff's pod. *Plff's Resp.* at ¶ 25; *Defts' Ex.* 5 at pg. 4.

---

[3] The only hospital records submitted in connection with this motion are from Plaintiff's visit to the emergency room on August 8, 2009, as a result of his complaints of left chest pain. *Defts' Ex.* 4. The jail medical file, which consists of only two pages, does not contain any information regarding a second visit to the hospital or treatment for a slip and fall. *Defts' Ex.* 2.

On January 25, 2010, Lieutenant Janet Delaney wrote an incident report stating that the lock from the trap door to the roof had been found in the trap of Plaintiff's commode. *Defts' Ex.* 5 at pg. 6. According to the report, Plaintiff admitted to attempting to flush the lock. *Id.* Lieutenant Delaney stated her opinion was that Plaintiff continued to be an extreme security and escape risk. *Id.* Plaintiff states he did not admit to trying to flush anything. *Id.*

On February 22nd, Plaintiff submitted a request form stating that he had been suffering serious chest pains and nose bleeds for a week and had not received medical treatment. *Defts' Ex.* 3 at pg. 28. He stated he had filled out a medical request and that officers had personally delivered a note to the nurse's desk and he still had not received treatment. *Id.* Captain Young responded that Plaintiff should send his medical request to the nurse and to remember that she worked only part time. *Id.*

On February 26th, Plaintiff submitted another request form complaining that he was suffering from chest pains and had put in three medical requests over the past week and still had not been seen. *Defts' Ex.* 3 at pg. 29. Captain Young responded that the nurse was only part-time and Plaintiff should keep sending her requests. *Id.*

Plaintiff submitted a grievance on March 1st complaining that he had been having serious chest pains for two weeks, submitted several medical requests, and still had not been seen. *Plff's Resp.* at ¶ 12; *Defts' Ex.* 3 at pg. 30. Captain Young responded that he would tell the nurse. *Id.* Another grievance was submitted on March 5th by the Plaintiff stating he still had not received medical attention. *Plff's Resp.* at ¶ 13(A); *Defts' Ex.* 3 at pg. 32. Captain Young responded that he would personally tell the nurse and hope that she would schedule Plaintiff for an appointment. *Id.*

Plaintiff states he did see the nurse but is unaware of the dates and treatment received.  *Plff's Resp.* at ¶¶ 13(B) & (C).

On March 16th, Plaintiff submitted a grievance stating that on March 15th newspapers were passed out to every pod except pod 5.  *Plff's Resp.* at ¶ 27; *Defts' Ex.* 3 at pg. 34.  He stated he believed he was being retaliated against because he had submitted grievances.  *Id.*  Plaintiff stated he had a legal right to access to news coverage either through newspapers or television.  *Id.*

In response, Captain Young stated he knew what the law stated but that it did not allow inmates to use the newspaper to cover vents, lights, and to stop up commodes.  *Defts' Ex.* 3 at pg. 34.  Captain Young told Plaintiff to do what he wanted but for now there would be no newspapers.  *Id.*

On March 22nd, Plaintiff submitted a grievance stating that every black inmate in pod 5 was denied yard call while the only white inmate in pod 5 attended yard call.  *Plff's Resp.* at ¶ 17; *Defts' Ex.* 3 at pg. 35.   Captain Young stated that he would look into the situation.  *Id.*

On March 24th, Plaintiff complained that Sergeant Davis would not allow any inmates from pod 5 to have recreation or access to newspapers.  *Defts' Ex.* 3 at pg. 36.  Plaintiff stated Sergeant Davis did the same thing on the 15th and the 19th.  *Id.*  Plaintiff stated that it was mandatory that inmates have yard call and access to the news.  *Id.*

Captain Young responded that access to the newspapers had been reinstated.  *Defts' Ex.* 3 at pg. 36.  While the law may say what they had to provide inmates, Captain Young stated that if "what is to be provided is abused and misused then it becomes an issue that the law leaves for justified reasoning."  *Id.*

-10-

On March 30th, Plaintiff complained that Sergeant Davis again denied pod 5 yard call. *Defts' Ex.* 3 at pg. 37.  Plaintiff stated he was starting to have problems with his eye sight because of lack of access to natural light.  *Id.*  He asked that personnel be advised that he needed and wanted natural light at yard call.  *Id.*  Captain Young responded:  "Maybe later down the line but not now."  *Id.*

On April 5th, Plaintiff asked if he could be allowed to play chess with another inmate in the day room of pod 5.  *Defts' Ex.* 3 at pg. 38.  He stated he had been locked up for seven months with nothing constructive to do.  *Id.*  In response, Captain Young stated:  "I'll think about it, but I seriously doubt it.  Remember you are filing suits against Columbia County and you continue to ask us to do things for you."  *Id.*

On April 12th, Plaintiff again complained that he was having problems with his vision. *Defts' Ex.* 3 at pg. 39.  He stated he believed it was because of the light he was in for twenty-three hours a day in his cell.  *Id.*  He indicated he had previously requested medical care but had not been seen.  *Id.*  Captain Young responded that he would tell the nurse when he made contact with her. *Id.*

On June 5th, Plaintiff maintains that Lieutenant Delaney came down to pod 5 and began harassing him.  *Plff's Resp.* at ¶ 34(B).  According to the Plaintiff, the two got into a verbal altercation and she ordered Officer M. Richardson to open the food trap in the door.  *Id.*  She then began spraying a "great amount" of mace or pepper spray into the cell.  *Id.*  At the time, Plaintiff states he was in lock-down in a single cell.  *Id.*

### 2.  Summary Judgment Standard

"Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *HDC Med, Inc. v. Minntech Corp*., 474 F.3d 543, 546 (8th Cir. 2007).  In ruling on a summary judgment motion, the Court cannot weigh the evidence or resolve disputed  issues of fact in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"[A] disputed fact alone will not defeat summary judgment, rather there must be a genuine issue of material fact.  To be material, a fact must affect the outcome of the suit under the governing law." *Torgerson v. City of Rochester*, 2011 WL 2135636, *16 (8th Cir. June 1, 2011)(internal quotation marks and citations omitted).

### 3.  Arguments of the Parties

Defendants maintain they are entitled to summary judgment in their favor because there is no evidence that Plaintiff's constitutional rights were violated during his incarceration at the CCDC.  Moreover, they argue they have been sued in their official capacities only and there is no evidence of any unconstitutional county policy or custom.  In the absence of such evidence, they assert they are entitled to judgment as a matter of law.

Plaintiff maintains his constitutional rights were violated in multiple ways and his case should be heard by the Court.  However, he indicates he did intend to sue the Defendants only in their official capacities. *Plff's Resp.* at ¶ 37.

### 4.  Discussion

As noted above, Plaintiff has asserted a number of claims.  Each will be addressed below.

**A.  Denial of Medical Care**

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).  To prevail on an Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Bender v. Reigier*, 385 F.3d 1133, 1137 (8th Cir. 2004)(internal quotation marks and citation omitted).

As Plaintiff is bringing only official capacity claims, his claims are against Columbia County and he must establish Columbia County "itself caused the constitutional violation at issue."  *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010)(internal quotation marks and citation omitted).  To do so, Plaintiff must demonstrate "that there was a policy, custom, or official action that inflicted an actionable injury."  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

"To establish the existence of a policy, [Plaintiff] must point to a deliberate choice or a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Jenkins v. Hennepin County*, 557 F.3d 628, 633 (8th Cir. 2009)(internal quotation marks and citation omitted).  To prevail, Plaintiff must "also show that the policy was unconstitutional and that it was the moving force behind the harm he suffered."  *Id.*

"[A] custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional conduct."  *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

-13-

"A plaintiff must also show either that policymakers were deliberately indifferent to the misconduct or that they tacitly authorized it." *Jenkins*, 557 F.3d at 634. "Liability for an unconstitutional custom . . . cannot arise from a single act." *McGaautha v. Jackson County*, 36 F.3d 53, 57 (8th Cir. 1994).

On the basis of the record before me, I find there are genuine issues of fact as to whether Columbia County had a pervasive pattern of constitutional violations with regard to the provision of medical care. In this case, Captain Young received numerous grievances from Plaintiff complaining that his requests for medical treatment were being ignored. In response, Captain Young merely stated he would let the nurse know or reminded Plaintiff that the nurse was only part-time. The records submitted indicate Captain Young on one occasion, October 27, 2009, by memorandum, did inform Nurse Maness that five separate inmates, including the Plaintiff, had been complaining that their requests for medical care were being ignored. *Defts' Ex.* 5 at pg. 2. The following day, Captain Young again, by memorandum, advised Nurse Maness that inmates were submitting grievances stating they "are being denied medical attention, after putting in several requests to see the nurse." *Id.* at pg. 3. The jailers also reported that inmate medication was not always available. *Id.*

The summary judgment record contains no other indication of what, if any, efforts were taken to ensure Plaintiff received medical care. No information has been provided to the Court regarding the processing of medical requests or how frequently Nurse Maness saw patients or reviewed requests. No other information is provided regarding how medical care is provided to inmates. We therefore cannot conclude that Sheriff Foster and Captain Young in their official capacities are entitled to summary judgment on this claim.

-14-

### B.  Denial of Due Process

Plaintiff maintains his Due Process rights were violated when he was placed in administrative segregation without a reason being given or an opportunity to be heard. "The Supreme Court has outlined the procedures correctional facilities must follow to conduct an impartial due process hearing on a disciplinary matter." *Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008)(*citing Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974)).  These procedures include written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *Id; see also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

While it appears these procedures were not followed in connection with Plaintiff being placed on administrative segregation, nothing in the record before the Court suggests Columbia County had a custom, policy, or practice of placing inmates on disciplinary confinement without Due Process. Without such evidence, Plaintiff cannot establish liability against the Defendants in their official capacities.

### C.  Denial of Access to the Courts

Plaintiff maintains Defendants interfered with his access to the courts by refusing to fill out the inmate account certificate on his *in forma pauperis* application and by destroying documents including grievances he was filing in connection with this case.   "Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)(*citing Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817 (1997)).  The right of access requires the provision of "prisoners with adequate law libraries or adequate assistance from persons trained in the law," *Bounds*, 430 U.S. at 828, to challenge their

-15-

criminal charges, convictions, and sentences directly or collaterally or to challenge the conditions of their confinement through civil rights actions, *Casey*, 518 U.S. at 351; *see also Cody v. Weber*, 256 F. 3d 764, 767-68 (8th Cir. 2001)("right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court'")(*quoting Casey*, 518 U.S. at 354-55).

Defendants are entitled to summary judgment on this claim.  First, Plaintiff has presented no evidence of a custom, policy, or practice of Columbia County that denied him access to the courts. Second, Plaintiff's claim fails because he suffered no actual injury.  The right of access to the courts is not an abstract one and the inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim."  *Casey*, 518 U.S. at 351; *see also Hartsfield*, 511 F.3d at 832 (Hartsfield failed to allege he was prevented from filing a complaint, or a filed complaint was dismissed for lack of legal adequacy.  He only roughly and generally asserted that he was prevented from filing because he did not know what arguments to make.  This claim is speculative and was properly dismissed); *Klinger v. Department of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic).  Plaintiff did not miss any deadlines for filing documents with a court and was not prevented from filing a case or claim.

### D.  Interference with Mail

Inmates have a First Amendment right of free speech to send and receive mail.  *Hudson v. Palmer*, 468 U.S. 517, 547 (1984).  "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment."

*Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977).  Restrictions on this First Amendment right are valid "only if [they are] reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987).  "[E]conomic factors may . . . be considered . . . in choosing the methods used to provide meaningful access.  But the cost of protecting a constitutional right cannot justify its total denial." *Bell-Bey v. Williams*, 87 F.3d 832, 838 (8th Cir. 1996)(*citing Bounds v. Smith*, 430 U.S. 817, 824-25 (1977)).

Here, Plaintiff complains of his mail was not always being delivered in a timely manner, one letter being returned to sender, and legal mail being opened outside his presence.  Plaintiff has not suggested there was any ongoing practice of censorship or that the application of any policy resulted in the alleged interference.  *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)(Plaintiff must show regular and unjustifiable interference-- an isolated incident of mail tampering is usually insufficient to establish a constitutional violation); *Zimmerman v. Tribble*, 226 F. 3d 568, 572 (7th Cir. 2000)(allegations of sporadic and short-term delays and disruptions are insufficient to state a claim under the First Amendment); *Rowe v. Shake*, 196 F.3d 778, 782-783 (7th Cir. 1999)(relatively short-term and sporadic delays in receiving mail not the result of content-based prison regulation or practice is insufficient to state a First Amendment claim).  Defendants are therefore entitled to summary judgment on this claim.

### E.  Retaliation

In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001)(citation omitted); *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)(same).  "Indeed, the retaliatory conduct does not itself need to be a

-17-

constitutional violation in order to be actionable." *Id.   See also Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994)("[W]hen retaliatory conduct is involved, there is no independent injury requirement.").

While Plaintiff contends he was retaliated against on several occasions, he does not suggest that such conduct was the result of the application of a custom, policy, or practice of Columbia County.  In the absence of any such showing, his claims fail.

**F. Conditions of Confinement & Group Punishment**

Plaintiff voices complaints about not having his mattress and bedding at all times, being in a pod with a non-working panic button and no fire detection equipment, not having outside recreation, his laundry not always being cleaned properly, being sold items from the commissary that are marked not for individual sale, and being charged for toiletry and donated items.  "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)(citation omitted).  The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.   The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501

U.S. 294, 298 (1991)).   "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner"  *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).   Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

In this case, Plaintiff has not shown the existence of a genuine issue of material fact as to whether Columbia County had a policy, custom, or practice of showing deliberate indifference to the safety and health of the inmates in the CCDC.  Moreover, there is no genuine issue of material fact as to whether the conditions he was subjected to deprived him of the minimal civilized measure of life's necessities.

Plaintiff also maintains the Defendants engaged in unconstitutional  "group punishment" when they would take away mattresses, take away newspapers, and deny yard call to a pod because of the conduct of a few inmates.  I find this argument to be without merit.  Prison officials are permitted to take measures to preserve the security and safety of the facility and it employees, to control the inmates, and to preserve the safety and security of the inmates.  *See e.g., Johnson v. Williams*, 788 F.2d 1319 (8th Cir. 1986).  The measures taken by Defendants, while they may have been disagreeable to the inmates, did not violate the Eighth Amendment.  *See e.g., Howard v.*

*Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)(Eighth Amendment claim evaluated in terms of whether the conduct was "so inhumane, base or barbaric so as to shock the sensibilities.").

### G.  Race Discrimination

Plaintiff maintains there were occasions when "white" prisoners were treated more favorably. He identifies the following incidents:  a white prisoner receiving books and/or magazines on one occasion; a white prisoner being given special visitation rights on one occasion; and a white prisoner being given recreation on one occasion when the remainder of the pod was denied recreation.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)(citation omitted).  In this case, Plaintiff does not identify a discriminatory regulation, policy, or practice, or custom but instead points to only isolated events.  There is no suggestion in the summary judgment record that Columbia County had a custom, policy, or practice that was discriminatory.  Defendants are therefore entitled to summary judgment on this claim.

### 5.  Conclusion

For the reasons stated, I recommend that Defendants' summary judgment motion (Doc. 13) be granted in part and denied in part.  Specifically, I recommend that the motion be granted with respect to all claims asserted except for Plaintiff's denial of medical care claim against Sheriff Foster and Captain Young.  This would dismiss all claims against Lieutenant Delaney, Sergeant Davis, and Jailer Pitts.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are**

reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 22nd day of August 2011.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE